

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 17, 2017

**BY ECF**
Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

      Re:  *United States* v. *Joseph Meli and Steven Simmons*, S1 17 Cr. 127 (KMW)

Dear Judge Wood:

      The Government respectfully submits this letter in opposition to defendant Joseph Meli's motion, filed September 15, 2017, for a continuance of the trial.  As set forth below, Meli's motion relies upon a mischaracterization of the Government's statements at the May 17, 2017 conference and the nature of materials produced in the last few months, much of which are more akin to early 3500 material, rather than Rule 16 discovery.  Moreover, the vast majority of discovery was produced by August 1, 2017, nearly four months before the trial date set by this Court and a full month before the discovery deadline.  Meli has not provided good cause for a continuance.  Accordingly, the Court should deny Meli's motion.

      By way of background, the initial Indictment in this case was returned approximately seven months ago, on February 23, 2017.  The Government made its initial discovery production on March 21, 2017 and has been diligently producing discovery on a rolling basis as material is received and determined to be discoverable.

      At a May 17, 2017 conference, the Court granted Meli's request for an additional 90-day adjournment to review previously produced discovery, and set a discovery deadline of August 31, 2017, a motions deadline of September 18, 2017, and a trial date of November 27, 2017.  The Court stated that these dates could be changed only upon a showing of "good cause."  (5/17/17 Tr. at 5).

      At the May 17 conference, the Government explained that all discovery then in the Government's possession had already been produced, with the exception of two categories: (i) e-mails from accounts belonging to third-parties that had been recently received and (ii) some additional bank and business records.  The Government estimated that the latter category—i.e., bank and business records—were being "produced today and in the next couple of days," *see id.* at 2-3, and were not "terribly voluminous."  (*Id.*).

In the instant motion, Meli mischaracterizes that statement as a representation about the total volume of discovery in this case. That is plainly wrong. As the transcript of the conference makes clear, the Government was specifically addressing the production of bank and business records made to the defense that day and an anticipated follow-up production, not to all the discovery in the case.

With respect to the former category—i.e, e-mail accounts belonging to third parties that had been recently received—the Government explained at the May 17 conference that those needed to be reviewed for both privilege and relevance and that the Government was diligently conducting that review to identify non-privileged discoverable items. (*Id.* at 3). Notably, the defendants were well aware of the existence of these third-party e-mail accounts, as the search warrant and search warrant affidavit for those accounts had been produced to the defendants more than a month earlier, on March 21, 2017.

Thus, contrary to Meli's claims in his motion, there was nothing "inconsistent" between the Government's statements at the conference and the subsequent discovery productions. Following the May 17, 2017 conference, the Government worked diligently through the summer to review the third-party e-mail accounts and to review additional materials it received, to ensure that the August 31, 2017 discovery deadline would be met. It was. In fact, the vast majority of this remaining discovery, including most of the e-mails, was produced to the defense on August 1, 2017, four months before trial. And the Government completed its discovery production on August 22, 2017—before the discovery deadline set by this Court and more than three months before the November 27, 2017 trial date.[1]

It is important to note, moreover, that much of the discovery produced to the defense in recent months bears at most a tangential relationship to the issues in this case. These include, for example, certain bank records for third parties and e-mails belonging to third parties. Moreover, much of this material is arguably not discoverable under Rule 16, but was rather produced in an abundance of caution.[2]

As these facts make clear, there is no "good cause" for adjourning the November 27, 2017 trial date. The defendants received the vast majority of the discovery by August 1, 2017, approximately four months before trial, and received the remaining discovery more than three

---

[1] Notably, a portion of the discovery materials produced on August 22, 2017 pertained to a then covert ongoing investigation into a related fraudulent scheme. That investigation resulted in the arrests, on September 6, 2017, of two individuals. *See United States v. Craig Carton and Michael Wright*, 17 Mag. 6692 (S.D.N.Y.). The Government plans to produce, in an abundance of caution, additional e-mails related to that investigation and, should the Court deny Meli's motion for a continuance, the Government will specifically identify to Meli any of those e-mails the Government will seek to introduce in its case-in-chief.

[2] As an example, the Government produced the entire e-mail account for, and a cell phone belonging to, a potential cooperating witness. The Government's production of much of this account is more aptly characterized as providing the defense with early *Giglio* and 3500 materials rather than Rule 16 discovery.

months before trial, and prior to the discovery deadline.  And much of the material produced is peripheral to the case and was produced in an abundance of caution.

Meli thus has had, and will continue to have, ample time to review discovery.  Nor does the superseding indictment, which was returned on September 5, 2017, three months before the scheduled trial date, provide any basis for an adjournment.  The superseding indictment involves the same scheme charged in the original indictment, adding a single count of aggravated identity theft against Meli for conduct which Meli has long been aware would be part of the Government's evidence at trial.[3]  There is no additional discovery associated with the superseding indictment.  Nor is Meli's complaint about having received documents from the SEC in a separate civil action a basis for an adjournment.  Much if not all of the SEC production, which was completed in or about late August, is the same material Meli has received from the Government.[4]

There is simply no basis for the requested adjournment and Meli's motion should be denied.[5]

                                  Respectfully submitted,

                                  JOON H. KIM
                                Acting United States Attorney


By:       _____/s/_____
            Elisha Kobre/Brendan F. Quigley
            Assistant United States Attorney
            Southern District of New York
            Tel: (212) 637-2599/2190

cc: Michael Bowen, Esq. (by ECF)
    Daniel Fetterman, Esq. (by ECF)
    Jeffrey Alexander, Esq. (by ECF)
    Florian Miedel, Esq. (by ECF)

---

[3] The initial indictment, for example, describes Meli's use of "fake agreements contain[ing] falsified signatures of representatives of the Production Companies." (Indictment ¶ 19). Additional fake agreements bearing falsified signatures used by Meli in furtherance of the scheme were produced in discovery.  The only other substantive change to the superseding indictment is the addition of a single overt act.

[4] Meli's motion also references his request for a bill of particulars.  Meli is not entitled to a bill of particulars and the Government plans to file a separate memorandum in opposition to his request for one.

[5] Moving the trial date to January 8, as proposed by the defense, would moreover conflict with the trial schedules of the two undersigned AUSAs most familiar with this case, both of whom have trials scheduled to begin the first week of February.