# EXHIBIT B

1

H9I7SIMC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        17 Cr. 127 (KMW)

5   STEVEN SIMMONS,
    JOSEPH MELI,
6
                  Defendants.
7
    ------------------------------x
8                                        New York, N.Y.
                                         September 18, 2017
9                                        10:45 a.m.

10

11  Before:

12                    HON. KIMBA M. WOOD
                                     District Judge
13

14                       APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    BY:  ELISHA KOBRE
17       Assistant United States Attorney

18  FLORIAN MIEDEL
         Attorney for Defendant Steven Simmons
19
    DANIEL FETTERMAN
20  JEFFREY ALEXANDER
    DANIEL STEIN
21       Attorneys for Defendant Joseph Meli

22

23

24

25

H9I7SIMC

1              (Case called)

2              (In open court)

3              MR. KOBRE:  Good morning, your Honor.  Elisha Kobre

4     for the government.

5              THE COURT:  Good morning.

6              MR. FETTERMAN:  Good morning, your Honor.  Daniel

7     Fetterman for defendant Meli, and with me is Jeff Alexander

8     from my office; and we're being joined by Dan Stein as

9     cocounsel.

10             THE COURT:  Very good.

11             MR. STEIN:  Good morning, your Honor.

12             MR. MIEDEL:  Good morning, your Honor.  Florian Miedel

13    for Mr. Simmons.

14             THE COURT:  Good morning.  The defendants need to be

15    arraigned on the superseding indictment.  Perhaps we should do

16    that first.

17             Mr. Miedel, I'm asking you whether you are prepared

18    for your client to be arraigned.

19             MR. MIEDEL:  Yes, I am.

20             THE COURT:  And have you had an adequate opportunity

21    to review the superseding indictment?

22             MR. MIEDEL:  Yes, we have.

23             THE COURT:  Is he ready to plead?

24             MR. MIEDEL:  He pleads not guilty.

25             THE COURT:  Thank you.

H9I7SIMC

1        Mr. Fetterman?

2        MR. FETTERMAN:  Yes, your Honor.  Mr. Meli has

3    reviewed the indictment, and he waives its public reading, and

4    he would like to enter a plea of not guilty.

5        THE COURT:  All right, thank you.  I have a trial that

6    would begin in the middle of your trial.  I may be able to move

7    it, but it causes me to wonder whether your trial could be

8    moved a little earlier.  Mr. Fetterman?

9        MR. FETTERMAN:  Your Honor, we actually had put in a

10   motion for an extension of the trial date.  I'm not sure if

11   your Honor had an opportunity to review it.

12       THE COURT:  I don't think I have.  What is the

13   reasoning behind it?

14       MR. FETTERMAN:  So, your Honor, at the last conference

15   I think the way it was left was the government had some

16   additional documents to produce, and my colleague, Mr. Bowen,

17   said we would like to see that and then come back to the court

18   about whether 90 days would be an appropriate amount of time.

19       As it turns out, your Honor, our motion is based on

20   the fact that since that conference the government has produced

21   more than 2 million pages of documents from 70 custodians.

22       And I think the following facts are undisputed --

23   obviously Mr. Kobre will correct me if he disagrees -- but

24   since that conference, your Honor, the government has produced

25   more than 800,000 documents totaling more than 2.1 million

H9I7SIMC

1    pages.  The government productions in August of this year --

2    which was a majority of those documents, more than a million

3    pages were produced in August -- were both infected and

4    incomplete; some of them we didn't get fully loaded until

5    August the 30th.

6         The total production, as I mentioned, was from 70

7    custodians, which in my view alone would necessitate an

8    adjournment, because of just the time involved for us to

9    investigate 70 custodians and their relationship to the case.

10        The government has refused -- and this is the second

11   motion we also made for a bill of particulars -- the government

12   has steadfastly refused to identify the victims and to connect

13   the investors and the victims identified in the indictment to

14   particular events.  And this is important, your Honor, because

15   the nature of this alleged scheme is that our client made

16   misrepresentations about having contractual rights to purchase

17   tickets to various events.  And the number of events that are

18   in play is more than we believe 20.  And we have asked for and

19   made a motion to the court for a bill of particulars simply

20   identifying who the victims are, who the investors are and

21   which scheme the government asserts they were defrauded

22   through -- let me rephrase that -- which event the government

23   alleges they were defrauded.

24        The government brought a superseding indictment, as

25   the court knows, on September the 5th, and plans -- and said in

H9I7SIMC

1   response to our motion that they plan to produce even more

2   documents, unidentified volume.

3          Finally, your Honor, on September the 6th they

4   arrested Craig Carton, which your Honor may have seen, and our

5   client is named we believe as an unindicted coconspirator, CC1,

6   in that complaint.

7          So, we're making this motion, your Honor, not for

8   delay purposes but really profoundly for due process, that for

9   us to review more than 2 million pages of documents, to

10  investigate the 70 custodians and the like, and to make

11  motions -- which were due today, your Honor -- is just not

12  feasible.

13         So, we asked the court in our motion papers -- and we

14  have a copy.  I can hand it up -- to push the trial date back

15  simply to -- your Honor had set some reserve dates in January.

16  It was I believe the 2nd, the 8th and the 15th, those weeks,

17  and we ask that the trial start January the 8th.

18         To my great surprise, your Honor, in their response

19  the government dropped a footnote and said that would interfere

20  with their trial calendar.  But at the last conference your

21  Honor ordered both parties to hold these January dates open.

22  So, we think in the interests of justice and due process that

23  moving the trial back to January the 8th is necessitated.

24         THE COURT:  How long do you think this trial will take

25  roughly?

H9I7SIMC

1          MR. KOBRE:  Your Honor, we think it will take about

2     two to three weeks.  And, your Honor, if I might have the

3     opportunity to respond.

4          We received defense counsel's motion on Friday, and

5     last night we put in a written submission, which I have a copy,

6     opposing defense counsel's request for an adjournment of trial.

7          THE COURT:  Yes, I will read that.

8          MR. FETTERMAN:  I have a copy of both.

9          THE COURT:  Apparently I have it here, so let me read

10    it.

11          Roughly what quantity of discovery was already

12    produced?  I don't have a feeling for that.

13          MR. KOBRE:  Sure, your Honor.  So, by the time of the

14    last conference a fair amount of discovery had been produced.

15    I don't know the number of pages, your Honor, but the bulk of

16    the most relevant and central material to this case had already

17    been produced at that time.  I can give your Honor a better

18    sense of what was produced after, so you have a sense of that.

19          What was produced afterwards -- and as we told the

20    court at the conference, there were essentially two categories

21    of materials still left to be produced.  There were some bank

22    and business type records in the nature of sort of subpoena

23    returns.  And then there were e-mail accounts that the

24    government had recently received and needed to review both for

25    privilege and for relevance before turning those over to the

H9I7SIMC

1    defense.  So, the bulk of what defense counsel is referring to

2    was produced after the conference were those e-mail accounts

3    that were reviewed.

4           Now, essentially the bulk of those e-mails are

5    actually e-mail accounts that belong not to the defendant --

6    those had already been produced before the conference to the

7    extents they existed -- they were, rather, an e-mail account

8    belonging to a potential cooperating witness, a cooperating

9    witness in this case, which quite frankly, your Honor, is

10   mother in the nature of sort of 3500 material rather than Rule

11   16 discovery.  But we produced it early on so defense counsel

12   would have that.

13          We also produced, your Honor, the phone belonging to

14   that cooperating witness, like the data from that phone.  We

15   produced e-mails from accounts of other third parties that we

16   had a chance to review and turn over.

17          Just so your Honor also has a sense, at the

18   conference, as your Honor may recall, you set a discovery

19   deadline of August 31.  The bulk of the materials that defense

20   counsel is referring to, these e-mail accounts, were all

21   produced by August 1.  That's four months, your Honor, before

22   the trial date that your Honor had scheduled.

23          There was a subsequent production of just sort of

24   business and bank type records in the nature of subpoena

25   returns.  I think defense counsel makes a lot of that.  But

H9I7SIMC

1  when you sort of look at what that discovery material is, it's

2  really not the sort of thing that really will take or should

3  take defense counsel much time to review.

4         For example, your Honor, 6,000 pages are, for example,

5  AT&T records for a phone that doesn't belong to either of the

6  defendants.

7         THE COURT:  What is their relevance?

8         MR. KOBRE:  They maybe belong to a potential

9  coconspirator or, you know, other entities that might somehow

10  be peripherally related to this scheme, but they're not -- you

11  know, the government produced those records not really because

12  we plan to introduce them at trial but simply in an abundance

13  of caution.

14         THE COURT:  Well, they still have to be reviewed.

15         MR. KOBRE:  Sure, your Honor, but they're not central

16  to the case here.  The records that defendant is talking about,

17  and they're really relevant, are the bank records.  We produced

18  the agreements that are at issue here that were fraudulent

19  agreements, and the bank records, and records relating to the

20  victims.  And those, your Honor, were all produced quite early

21  on in this case, and not only were they produced, but they were

22  produced in a very organized manner.

23         Just so your Honor has a sense, for example, with

24  respect to records from victims, we actually -- not trying to

25  hide the ball, we created folders with the names of the victims

H9I7SIMC

1    and put the records that were obtained from those victims into

2    those folders.

3         So, you know, it's kind of a red herring for defense

4    to say, well, we don't know who the victims are that you are

5    alleging here, when they have sitting on their hard drives

6    folders with the names of victims and documents relating to

7    those individuals.  They have the agreements that the

8    government is alleging are fraudulent all produced very early

9    on.

10        So, your Honor, quite frankly this is a red herring.

11   The defense has had the discovery in this case, the vast bulk

12   of it, months and months before trial, and there is really no

13   need for an adjournment here.

14        THE COURT:  All right.

15        MR. FETTERMAN:  Your Honor, if I may just respond to a

16   couple of things.  I believe at trial we will demonstrate to

17   the court, to the jury, to the government, that they under

18   investigated this case, that they don't have a complete picture

19   of that happened.

20        So, while Mr. Kobre may represent to the court that

21   they have produced the bulk of documents that are critical to

22   their case, that's not necessarily true for us, your Honor.

23   That's the first point.  The second point your Honor made,

24   which I thought was important, is we can't take their word for

25   whether this is potential 3500 material or may be tangential.

H9I7SIMC

1    These are in the words of Mr. Kobre coconspirators, potential

2    coconspirators.  And as we're going through this we need to

3    look at those documents, and we can't take their word for it.

4              Finally, I would just suggest, your Honor, that on

5    August the 1st they made a production.  There were technical

6    problems with their production.  They sent a cover letter that

7    was incomplete.  So, they may have technically sent that

8    production out the door, but it wasn't necessarily reviewable

9    by us on August the 1st.

10             I think respectfully just about any court in this

11   courthouse, if lawyers came and said, your Honor, we have

12   received close to two million documents since the last

13   conference, we have 70 custodians we need to look into, asking

14   for eight weeks we think is a very reasonable ask and frankly

15   required by due process.

16             THE COURT:  The date you have asked for is?

17             MR. FETTERMAN:  January the 8th, your Honor.

18             THE COURT:  I think that's a reasonable request.  I

19   may have to send this case to another judge because I have two

20   other trials during the time of January 8 through the 26th.  I

21   will check around about that.

22             MR. KOBRE:  Your Honor, if I might be heard briefly.

23             THE COURT:  Yes.

24             MR. KOBRE:  Would December be a possible alternative?

25             THE COURT:  Over the Christmas holidays doesn't sound

H9I7SIMC

1    to me like a good way of getting juror attention.

2         MR. KOBRE:  That's probably correct, your Honor.  I am

3    just trying to avoid a situation.  I know your Honor had

4    directed the parties to reserve some dates in January.  You

5    know, unfortunately both of the assistants in this case sort of

6    had trials scheduled at some point in February.  But

7    understanding that, your Honor, if there was a way to sort of

8    instead of having the January 8, to sort of move that up a

9    little bit earlier, perhaps the first week of January.

10        THE COURT:  I could do that.

11        MR. FETTERMAN:  Your Honor, may I be heard on that?

12   We asked for January the 8th intentionally.  We're asking for

13   that eight weeks over the Thanksgiving holiday, over the

14   Christmas/Hanukkah holidays, over New Year's.  I mean those are

15   not eight full weeks for us, and January the 2nd would have

16   been seven.  So we ask for that additional week.

17        I just don't think that the government should be heard

18   to complain when the court specifically directed both parties

19   to leave the weeks of the 2nd, the 8th -- I think it's the 2nd,

20   the 8th and the 15th open, that they now have a conflict.

21        THE COURT:  All right.  Let me ask, when will the

22   assistants who are on this case be free of their other trial?

23        MR. KOBRE:  Your Honor, the trials are both scheduled

24   to begin in early February, and so I think they're probably two

25   to three week trials.

H9I7SIMC

1          THE COURT:  All right.  So if we set this for January

2     2, presumably they could work it.

3          MR. KOBRE:  I think that would help tremendously, your

4     Honor.

5          THE COURT:  It would also help my trial calendar; I

6     would have fewer conflicts.  And I do think that that is an

7     ample continuance.  So, trial will begin January 2 at 9 in the

8     morning.  We will be trying the case each day from 9:30 to 2:30

9     with a half hour break at lunchtime.  That should give counsel

10    extra time to review documents and get any work done that

11    wasn't done before January 2.

12          All right.  I think we need a Speedy Trial Act

13    adjournment.

14          MR. KOBRE:  Yes, your Honor.  The government would ask

15    that to allow the defense to continue to review discovery and

16    consider their motions.

17          THE COURT:  All right.  Do defense counsel have any

18    objection to that exclusion?

19          MR. MIEDEL:  No, objection.

20          MR. FETTERMAN:  No.

21          THE COURT:  In light of the fact that counsel have

22    requested time to review voluminous discovery and to consider

23    what if any motions to make, I find that an exclusion of time

24    from today through January 2 is in the interests of justice and

25    that those interests outweigh the interests of the defendants

H9I7SIMC

1    and the public in a speedy trial.  I thus exclude that time.

2              You stood up?

3         MR. MIEDEL:  Well, your Honor, I stood up because I

4    would ask that the other dates, including motions, be adjusted

5    accordingly.

6         THE COURT:  I was about to do that.

7         MR. MIEDEL:  OK.

8         THE COURT:  What do counsel propose?

9         MR. FETTERMAN:  Your Honor, we had a proposed schedule

10   based on the January the 8th date.

11        THE COURT:  If you move it back a week, what are you

12   proposing?

13        MR. FETTERMAN:  That our motions would be due October

14   the 23rd.  I need to get the calendar out.  I can give you the

15   original dates that we had requested and then perhaps --

16        THE COURT:  The 23rd is a Monday.

17        MR. FETTERMAN:  Is a Monday?  So that works.  We had

18   asked that the discovery be completed.  The government

19   referenced that they plan to make further productions, and I

20   would ask that Mr. Kobre represent now what the volume is going

21   to be.  Because he suggested that if the court didn't move the

22   trial date, he would identify which specific documents he was

23   going to use, which sounded to me like it was going to be a

24   fairly voluminous production.  I would like to know now so that

25   we don't find ourselves in the same position.  But assuming

H9I7SIMC

1    it's not a tremendous volume, your Honor, I think we were

2    proposing that discovery be completed by October the 7th.  We

3    have the 12th, so, sorry, October the 5th would be a week

4    early.

5               THE COURT:  OK.  Mr. Kobre, what is the volume of that

6    discovery?

7               MR. KOBRE:  Your Honor, right now I'm aware of 1,000

8    or 2,000 additional documents.  But I must tell your Honor that

9    our investigation is continuing, so we are continuing to obtain

10   records as our investigation develops, and we will produce it

11   promptly as soon as we get it, but we're just not going to stop

12   our investigation in order to accommodate defense counsel's

13   schedule.

14            To the extent that the material comes in too late to

15   be used at trial, you know, so be it and the court can order

16   that.  But, you know, I can tell you that right now what is in

17   our possession is I believe it's about 2,000 documents.

18               THE COURT:  And they will be produced when?

19               MR. KOBRE:  Your Honor, I think we can produce those

20   within a week.

21               MR. FETTERMAN:  Your Honor, Mr. Kobre's explanation to

22   the court raises a concern for defense counsel, which is that,

23   as I said to the court, it's our belief that the government

24   underinvestigated this case and then indicted it prematurely,

25   and I am concerned that they are now using the grand jury to

H9I7SIMC

1    continue their investigation.  I mean Mr. Kobre almost said as

2    much.  He said his investigation is continuing.  And it's a

3    real concern that they're continuing to get documents.  This

4    has happened post indictment.  We got 2 million pages since the

5    last conference, which was many months after the original

6    indictment.  So, I'm just raising it as a concern, your Honor.

7          MR. KOBRE:  If I can briefly respond.  As defense

8    counsel well knows, a large number of those pages that he is

9    referring to are e-mail accounts that were obtained through a

10   search warrant that was issued very early on in this

11   investigation.  Defense counsel knows that because that search

12   warrant affidavit and warrant for that account were produced to

13   him in March of this year, about a month after the indictment

14   was returned.

15          So, it's really a red herring, your Honor.  Again, the

16   government investigation is continuing, and to the extent we

17   get additional documents, we will produce them promptly to the

18   defense.

19          THE COURT:  All right.  Defendants have proposed that

20   the government complete discovery by October 5.  Are you

21   suggesting that's not possible?

22          MR. KOBRE:  No, your Honor, we will produce everything

23   that's in our possession by October 5, and to the extent that

24   more material comes into our possession after that, we will

25   produce it promptly to the defense.

H9I7SIMC

1        THE COURT:  All right.  We will wait and see what

2    repercussions that has.  How is October 23 for motions?

3        MR. KOBRE:  That's fine for the government.

4        THE COURT:  OK.  And how long does the government

5    anticipate needing?

6        MR. KOBRE:  We would ask for two weeks to respond.

7        THE COURT:  OK, that would be November 6, and any

8    reply by November 9, and that would include motions in limine.

9        MR. KOBRE:  Thank you, Judge.

10       MR. FETTERMAN:  So, your Honor, we had in the previous

11   schedule pretrial submissions were to be due January the 2nd.

12   That date needs to be moved earlier.  And I was wondering if we

13   could -- and perhaps your Honor has already ruled on this --

14   but we could make motions in limine concurrent with that date

15   as opposed to other motions.  Because, as your Honor is aware,

16   the motions in limine are often the sort of last thing as

17   you're getting ready for trial that you are aware of could be a

18   problem, and so I would just suggest to the court that it would

19   certainly be beneficial to the defense, particularly since we

20   lost the week, if we could make our motions in limine with the

21   pretrial submissions.  And then we need to pick a date.  It's a

22   little bit complicated.  I don't have a calendar in front of

23   me, but it falls right around Christmas when you back it up.

24       THE COURT:  I have a calendar, and what I propose is

25   to leave Christmas week fallow and be generous about the dates

H9I7SIMC

1    ahead of it.

2            If pretrial submissions are due December 11, I think

3    that leaves you time to do your last minute preparation as well

4    as celebrate the holidays.

5            MR. FETTERMAN:  Thank you, your Honor.  Could we

6    include the motions in limine with that?

7            THE COURT:  Yes, you can.

8            MR. FETTERMAN:  Thank you, your Honor.

9            THE COURT:  Now December 11 for the pretrial

10    submissions.  I think it would be better for the motions in

11    limine come December 4 so that I will have everything in front

12    of me December the 11th.

13            OK.  Any response to the motions in limine, can that

14    be due the 11th, Mr. Kobre?

15            MR. KOBRE:  Yes, your Honor.

16            THE COURT:  OK.  And with respect to pretrial

17    submissions, voir dire and requests to charge, you may already

18    know this, but I like to have them on the same disk, the

19    government's proposal first, the defense red lined proposal

20    second, and any authorities you wish me to consider.

21            I have started using the voir dire that some new

22    judges are using, which is to have most of the questions in

23    writing and to have each juror stand, the first juror responds

24    to each question, the next juror responds to which questions as

25    to which the answer is yes, such as do you prefer the

H9I7SIMC

1   government testimony to defense testimony, things like that.  I

2   am happy to share a copy of it with you from my last criminal

3   trial.

4           MR. FETTERMAN:  That would be great.

5           MR. KOBRE:  Yes.

6           THE COURT:  OK.  My deputy will send those out.

7           MR. FETTERMAN:  Great.  Thank you.

8           THE COURT:  Anything further?

9           MR. KOBRE:  Not from the government, your Honor.

10          MR. FETTERMAN:  Yes, your Honor.  We also had filed a

11  motion for a bill of particulars.

12          THE COURT:  Oh, right.

13          MR. FETTERMAN:  And, as I mentioned, it's really

14  important for us, your Honor.  The government has alleged a

15  Ponzi scheme involving $96 million and I think over 130

16  investors, and they specified certain victims with a capital V

17  in the indictment, and there are like 20 potential events.

18          Everything is vague in the indictment, and we think at

19  this point, Judge -- particularly now that they're continuing

20  to investigate -- this really is feeling a lot like trial by

21  ambush, and I think that due process really at this point

22  requires -- and we have submitted authorities to the court; the

23  government's response has been in our calls -- and I'm

24  obviously summarizing in effect -- we produced lots of

25  discovery; you have what you need.

H9I7SIMC

1        That has not been a sufficient response in the cases

2   that we cited.

3        THE COURT:  Let me hear from the government.  I have

4   in front of me your request.  Now, the government has said that

5   it produced files for each purported victim and all documents

6   relating to that victim?  Is that correct?

7        MR. KOBRE:  To the extent we have interviewed

8   particular victims and have obtained document from them, when

9   we produced those to the defendant we have lumped them together

10  in a folder with the name of the victim.

11       But, your Honor, the government would just ask for an

12  opportunity to respond on the papers.  Defense filed their

13  motion just Wednesday, and we don't believe a bill of

14  particulars is appropriate in this case.  There is a detailed

15  criminal complaint defendants have.  They have a detailed

16  indictment, they have extremely organized discovery and a great

17  deal of it, and we just ask for the opportunity to respond to

18  the motion.

19       THE COURT:  All right.  It would be helpful when you

20  respond to give me, let's say, an exhibit showing what you have

21  produced and what you are not yet producing to them by way of

22  bill of particular information.

23       MR. KOBRE:  Yes, your Honor.

24       MR. FETTERMAN:  And, your Honor, we will wait for the

25  government's response obviously, but I just wanted to let the

H9I7SIMC

1    court know.  My understanding is -- I don't have the exact

2    numbers in front of me -- that we are talking about six to

3    seven investors that they've produced in that fashion.

4         There is an allegation that there are 130 investors,

5    that these are victims.  There are all sorts of problems with

6    the government's theory.  It's significant to us for them to

7    tie each person that they think was defrauded to at least the

8    event that they say this person was defrauded as a result of.

9    In other words, the whole premise of their case is that

10   Mr. Meli made a representation that he had contractual rights

11   to a particular production and that in truth and in fact he did

12   not; and, therefore, he was defrauding these investors.

13        Well, it's important to us to know which investor and

14   which theatrical production or musical event it is.  And I

15   think when your Honor looks at the authorities, other courts in

16   similar circumstances, particularly with very large productions

17   of documents, have ordered a bill of particulars.  Thank you.

18        THE COURT:  I will wait to see the government

19   response.  Thank you.

20        MR. KOBRE:  Thank you.

21        THE COURT:  Have we set a date for any reply?

22        MR. KOBRE:  Your Honor, if the government can have two

23   weeks to reply to that?

24        THE COURT:  Oh, OK, two weeks for a response.  And

25   then if there is a reply from defense counsel, say one week?

H9I7SIMC

1          MR. FETTERMAN:  That would be fine.

2          THE COURT:  Thank you.

3          MR. FETTERMAN:  I have one more housekeeping matter to

4   raise with the court.  Our firm has identified a potential

5   conflict where we have advised the defendant of it.  We are

6   working on a couple of small things and plan to send the court

7   a letter suggesting a Curcio hearing on that issue.

8          Mr. Stein, whom the court knows, has come in.  He is

9   independent and conflict free, so I don't think it's a pressing

10  issue.  But I just wanted to just alert the court we will be

11  sending a letter, and then at the court's convenience obviously

12  we will be available for a Curcio hearing.

13         THE COURT:  All right.  What is the nature of the

14  potential conflict?

15         MR. FETTERMAN:  There is another party who is related

16  to this case that has a relationship with another client of the

17  firm.  We really think it's fairly attenuated and only a

18  potential for conflict, but I just wanted to put it on the

19  court's radar so that our letter didn't come out of left field.

20         THE COURT:  All right.  Given that it's your concern,

21  I would appreciate your including a script of what should be

22  asked of your client, rather than having the government have to

23  do it.

24         MR. FETTERMAN:  We were planning on that, and we will.

25         MR. KOBRE:  Thank you Judge.

H9I7SIMC

1          THE COURT:  Anything else?

2          MR. KOBRE:  Not from the government.

3          MR. FETTERMAN:  Not from the defense.

4          MR. MIEDEL:  No, your Honor.

5          THE COURT:  Thank you.  We are adjourned.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25